**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-06003-dd**
Adversary Proceeding Number: **12-80190-dd**

**ORDER GRANTING SCBT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**04/03/2013**



Entered: 04/04/2013

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Wesley O'Neal Davis,<br><br>            Debtor. | C/A No. 11-06003-dd<br><br>Adv. Pro. No. 12-80190-dd<br><br>Chapter 12 |
| Wesley O'Neal Davis,<br><br>            Plaintiff,<br><br>v.<br><br>SCBT, N.A. f/k/a South Carolina Bank and Trust, N.A., Crop Production Services, Inc., Helena Chemical Co., Blakes Service Center, and Meherrin Agricultural and Chemical Co.,<br><br>            Defendants. | **ORDER GRANTING SCBT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

    This matter is before the Court on a motion for partial summary judgment entered by defendant SCBT, N.A. f/k/a South Carolina Bank and Trust, N.A. ("SCBT") on January 4, 2013. Defendant Crop Production Services, Inc. ("CPS") responded in opposition. The Court held a hearing on the motion for summary judgment on January 22, 2013. After careful consideration, the Court grants SCBT's motion for partial summary judgment for the reasons set forth below.

**FACTS**

    The debtor, Wesley O'Neal Davis ("Debtor") filed a petition under chapter 12 of the Bankruptcy Code on September 28, 2011. Debtor filed this adversary proceeding on July 27, 2012, to determine the value and priority of liens creditors hold on three parcels of real property located in Orangeburg County, South Carolina in which Debtor owns a 50% interest. Creditors named as defendants in the adversary proceeding are SCBT, CPS, Helena Chemical Co. ("Helena"), Blakes Service Center, and Meherrin Agricultural and Chemical Co. Blakes Service

1

Center and Meherrin Agricultural and Chemical Co. did not answer the complaint, the Clerk of Court entered their default, and the Court entered an Order valuing their judgment liens at zero. SCBT, CPS, and Helena answered the complaint. In its answer, CPS asserted counterclaims to which SCBT responded and treated as crossclaims. SCBT moved for summary judgment on the issue of priority of the various lien holders with respect to their interests in the three parcels of real estate, and CPS was the only party to respond in opposition.

The facts surrounding this dispute are essentially not in question. Between 2005 and 2008, Debtor executed at least three promissory notes and two mortgages to SCBT. First, Debtor and his wife, Mary Jane Davis, executed a promissory note dated June 2, 2005, to SCBT in return for a loan in the amount of $191,375. As security for the loan, Mr. and Mrs. Davis executed a mortgage dated June 2, 2005, on the three parcels of property in Orangeburg County, and the mortgage was recorded. The June 2005 mortgage defines borrower as "WESLEY ONEAL DAVIS AND MARY JANE DAVIS JOINTLY" and contains a future advances clause that states "[t]he lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs."

Second, Debtor executed a promissory note dated March 14, 2007, to SCBT in return for a loan in the amount of $138,600. In the area for describing the security for the note, the note states "SEE ADDENDUM." The addendum to the March 14, 2007 note is signed by Debtor and lists various security agreements Debtor executed during the preceding years, including the entry: "Mortgage dated 06-02-2005 in the name of Wesley O'Neal Davis and Mary Jane Davis." Mrs. Davis did not execute either the March 14, 2007 note or the addendum. There is also no indication these two documents were ever recorded.

Third, Debtor executed a promissory note dated May 6, 2008, in return for a loan in the amount of $316,000. In connection with this promissory note, Mr. and Mrs. Davis executed a mortgage dated May 6, 2008, which was recorded. The May 2008 mortgage, under "DATE AND PARTIES," lists "WESLEY O'NEAL DAVIS and Mary Jane Davis." It also states in paragraph 2 that "[f]or good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property." The described property is the three parcels in Orangeburg County. Under paragraph 4, the mortgage provides that "[t]he term 'Secured Debt' includes, but is not limited to, the following: . . . [a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law . . . ." Additionally, it defines secured debt as including "[a]ll future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt." The mortgage further states in connection with future advances that "[i]f more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one Mortgagor and others." Under a clause entitled "JOINT AND INVIDIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND," the May 2008 mortgage provides:

> All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt.

3

"Evidence of Debt" is defined under paragraph 4.A. as the "NOTE DATED 05-06-2008 I/A/O $316,000.00 I/N/O WESLEY O'NEAL DAVIS WITH A MATURITY DATE OF 05-06-2015."

With respect to Helena, Mr. and Mrs. Davis executed a promissory note dated May 29, 2009, in return for a loan in the amount of $35,957.35. As security for the note, they signed a mortgage dated May 29, 2009, on the three Orangeburg County parcels. As for CPS, a judgment in its favor in the amount of $98,711.15 against Debtor was recorded on March 5, 2010 in Orangeburg County. This judgment is against Debtor and Davis Farms and not against Mary Jane Davis. Subsequently, Blakes Service Center and Meherrin Agricultural and Chemical Co. recorded judgments in Orangeburg County.

SCBT filed several claims in Debtor's bankruptcy case, including a secured claim in the amount of $132,597.31 with the June 2, 2005 note and mortgage attached as proof of the claim; a secured claim in the amount of $125,814.49 with the May 6, 2008 note and mortgage attached as proof of the claim; and a secured claim in the amount of $98,655.79 with the March 14, 2007 note, the June 2, 2005 mortgage, the May 6, 2008 mortgage, two UCC financing statements, and a commercial security agreement attached as proof of the claim. CPS filed a claim in the amount of $106,112.03 based on its judgment. Helena submitted a claim based on its promissory note and mortgage in the amount of $40,000, which it later amended to $40,561.26.

Debtor asserts in the complaint that all three of SCBT's claims and corresponding interests in Debtor's real property are entitled to priority, that Helena has second priority, and that CPS has third priority. SCBT agrees with Debtor's contentions.

CPS does not dispute the priority of SCBT's $125,814.49 claim and $132,597.31 claim arising from the June 2005 and May 2008 notes and mortgages or that these claims are secured. CPS does dispute the priority and secured status of the $98,655.79 claim arising from the March

4

14, 2007 note. CPS argues that SCBT's claims arising from the May 2008 and June 2005 notes and mortgages have first priority, that Helena's claim has second priority, and that its claim has third priority.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Bankruptcy Rule 7056, the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the moving party bears the initial responsibility of informing this Court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This requires that the moving party identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323; *see also Anderson*, 477 U.S. at 249.

Though the moving party bears this initial responsibility, the nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed R. Civ. P. 56(e). In satisfying this burden, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine dispute of material fact exists, *Anderson*, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must produce

5

evidence on which a trier of fact could reasonably find in its favor. *See Matsushita*, 475 U.S. at 587.

In considering a motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotations omitted).

## ANALYSIS

In its responsive memorandum, CPS asserts summary judgment should be denied because this Court earlier denied a motion to value claims secured by properties of the estate filed in the underlying bankruptcy. CPS argues SCBT presents no new information or evidence in its motion for summary judgment beyond what was provided in connection with the motion to value. However, CPS misapprehends the Court's ruling on the motion to value. Debtor sought relief in the form of a motion filed in the underlying bankruptcy requesting a determination of the extent, validity, and priority of various liens. The Court denied the motion because Bankruptcy Rule 7001 requires the filing of an adversary proceeding for the purpose of determining the validity, priority, or extent of a lien or other interest in property.

### A. Priority

A mortgage is a contract between the parties who entered into it. "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "Where an agreement is clear on its face and unambiguous, 'the court's only function is to interpret its lawful meaning and the intent of the parties as found within the

6

agreement.'" *Miles v. Miles*, 711 S.E.2d 880, 883 (S.C. 2011) (quoting *Smith-Cooper v. Cooper*, 543 S.E.2d 271, 274 (S.C. Ct. App. 2001)). "However, if the agreement is ambiguous, it is the court's duty to determine the intent of the parties." *Id.* "It may do so by examining extrinsic evidence." *Id.* "An agreement is ambiguous if it is susceptible to more than one interpretation or its meaning is unclear." *Id.* "The interpretation of an unambiguous contract is a question of law." *Id.* "Similarly, whether a contract is ambiguous is a question of law." *Id.* "If the court finds it necessary to examine extrinsic evidence to discern the intent of the parties, the determination of intent is a question of fact." *Id.*

When applying state law, federal courts have a duty "to ascertain from all the available data what the state law is and apply it." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *see also Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 464 (1967). In this regard, a state's highest court is "the best authority on its own law." *Bosch*, 387 U.S. at 464; *see also West*, 311 U.S. at 237 ("[T]he highest court of the state is the final arbiter of what is state law."); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) ("The best evidence to this effect would be, of course, a decision by the highest court of New Jersey which addresses the contract interpretation issues now before us, but that court has not spoken to many of these questions."). When a state's highest court has not spoken on an issue, a federal court must "predict how that court would rule if presented with the issue." *Private Mortgage Inv. Serv., Inc. v. Hotel & Club Assoc., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002); *see also Bosch*, 387 U.S. at 464 ("If there be no decision by [a state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."). Neither the parties nor the Court has located a South Carolina appellate court decision that is dispositive of the issues before the Court.

In the complaint initiating this advisory proceeding, Debtor, who is one of the mortgagors under the June 2005 and May 2008 mortgages and the obligor under the March 2007 note, asserts that the March 2007 note is secured by both mortgages. Of course, SCBT, who is the other party to these contracts, agrees that the March 2007 note is secured by both mortgages. Debtor also did not respond in opposition to SCBT's motion for summary judgment in which it argues the March 2007 note is secured by both mortgages.[1] Mary Jane Davis, who is the other mortgagor under both mortgages, is not a party to this adversary proceeding or a debtor in the underlying bankruptcy. Consequently, the issue of whether the March 2007 note encumbers her 50% interest in the real estate is not properly before the Court. Regardless, the Court need not decide this issue to resolve the dispute between CPS and SCBT because CPS does not have a judgment against Mary Jane Davis. Its judgment is against Debtor and Davis Farms.

Moreover, the Court finds that the consensus between Debtor and SCBT that their intent was both mortgages would secure obligations such as the March 2007 note, at least to the extent of Debtor's 50% interest in the property, is consistent with the language in the mortgages. The June 2005 mortgage contains a future advance clause which states "[t]he lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus

---

[1] It is not entirely clear what standing CPS has to dispute the apparent consensus between SCBT and Debtor, who are both parties to the contracts at issue, regarding what they intended to be secured by the June 2005 and May 2008 mortgages. *Cf. Professional Bankers Corp. v. Floyd*, 331 S.E.2d 362, 364-65 (S.C. Ct. App. 1985) ("The general rule at common law is that an action on a contract must be brought by the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor. Consequently, they or those in privity with them are generally the only persons who can sue on the contract."). Along a similar vein, even if the Court were to find the mortgages ambiguous and consider other evidence of the parties' intent, Debtor has already indicated what his intent was under the mortgages through the complaint initiating this proceeding and his non-response to SCBT's motion for summary judgment.

8

interest thereon, attorneys' fees and court costs." Although the June 2005 mortgage defines the mortgagors under it as "WESLEY ONEAL DAVIS AND MARY JANE DAVIS JOINTLY," Debtor through the complaint indicates his intent was that future advances to him made under the June 2005 mortgage would encumber his 50% interest in the real property. Again, SCBT, which is the other party to the June 2005 mortgage and March 2007 note, agrees with Debtor regarding the parties' intent under these agreements. Furthermore, Debtor does not dispute that the reference to the June 2005 mortgage in the addendum to the March 2007 note is enough to make that note a "future advance[] made under" the June 2005 mortgage.

Similarly, the May 2008 mortgage defines the debt being secured as not only the contemporaneous note but also "[a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law." Again, while the May 2008 mortgage lists the Mortgagors under it as "WESLEY O'NEAL DAVIS and Mary Jane Davis."[2] Debtor, who is the plaintiff in this adversary proceeding, indicates in the complaint his intent was that the March 2007 note, which was a debt he owed individually, was an existing obligation that, through the May 2008 mortgage, encumbered his 50% interest in the property. He does not assert that only debts owed by both he and his wife were existing obligations secured by the May 2008 mortgage. SCBT, who is the other party to the May 2008 mortgage, agrees with this interpretation.

The issue before the Court with respect to CPS, a subsequent judgment lien holder, is whether the June 2005 and May 2008 mortgages, which it does not dispute were properly recorded before its judgment lien, provide notice that they secure debts such as the March 2007 note. South Carolina's recording statute is a "race-notice" statute which provides protection to a

---

[2] Notably, the May 2008 mortgage does not say Wesley O'Neal Davis and Mary Jane Davis *jointly*.

9

subsequent purchaser or creditor that records first. *See* S.C. Code Ann. § 30-7-10; *Leasing Enter., Inc. v. Livingston*, 363 S.E.2d 410, 412 (S.C. Ct. App. 1987). In addition, South Carolina Code Annotated Section 29-3-50(A) provides that:

> Any mortgage or other instrument conveying an interest in or creating a lien on any real estate, securing existing indebtedness or future advances to be made, regardless of whether the advances are to be made at the option of the lender, are valid from the day and hour when recorded so as to affect the rights of subsequent creditors, whether lien creditors or simple contract creditors, or purchasers for valuable consideration without notice to the same extent as if the advances were made as of the date of the execution of the mortgage or other instrument for the total amount of advances made thereunder, together with all other indebtedness and sums secured thereby, the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated therein, plus interest thereon, attorney's fees and court costs.

"[R]ecording is the method by which a third party without actual notice is alerted to the possible transfer of interests in real property." *Leasing Enter.*, 363 S.E.2d at 412. Recording also provides constructive notice to others of the interest recorded. *Ex parte Johnson*, 145 S.E. 113, 122 (S.C. 1928). "Constructive notice is a legal inference which substitutes for actual notice." *Strother v. Lexington County Recreation Comm'n*, 504 S.E.2d 117, 122 n.6 (S.C. 1998). "It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts." *Id.*

The Court finds that the language in the June 2005 and May 2008 mortgages provided constructive notice that those mortgages secured debts such as the March 2007 note, at least to the extent of the 50% interest in the property of the obligor under that note. Particularly, the May 2008 mortgage indicates it secures "[a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law." Through the exercise of reasonable diligence, a creditor who sees this mortgage could contact SCBT to find out if there are other obligations owed by the mortgagors besides the note executed contemporaneously with the

10

respective mortgage. Additionally, with respect to an obligation one mortgagor owes but not the other, the mortgage would put a creditor on notice that the obligation the individual mortgagor owes may, at a minimum, encumber that mortgagor's interest in the property. Likewise, the future advance clause in the June 2005 mortgage provides notice that a future advance to one of the mortgagors which references the June 2005 mortgage may encumber that mortgagor's interest in the property.[3]

South Carolina Code Annotated Section 29-3-50(A) states that "the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated [in the mortgage], plus interest thereon, attorney's fees and court costs." The maximum principal amount under the May 2008 mortgage is $316,000. The note executed contemporaneously with the May 2008 mortgage was for a loan of $316,000. However, SCBT has filed a claim for $125,814.49 arising out of the May 2008 note and a claim for $98,655.79 arising out of the March 2007 note. The total of these two amounts does not exceed $316,000. The claim for $132,597.31 arising out of June 2005 note is secured by its own security instrument. Consequently, the amount that SCBT asserts is secured by the May 2008 mortgage at this time does not exceed the maximum principal amount stated in the mortgage. CPS has not asserted or presented authority demonstrating a different interpretation of section 29-3-50(A) controls.

In sum, the Court finds that the March 2007 note is secured by the June 2005 and May 2008 mortgages. The Court also concludes that the liens created by these security instruments and the debts they secure have first priority with respect to Debtor's 50% interest in the three

---

[3] As a practical matter, because CPS's interest in the property is a judgment lien and there is no indication that the obligation which is the basis of the judgment was secured, CPS is most likely not a creditor that relied on a search of real property records prior to extending credit to Debtor.

parcels of real property at issue, Helena's lien has second priority, and CPS's judgment lien has third priority.[4]

**B. Valuation**

Debtor asserts in the complaint that the value of the three parcels of real property in Orangeburg County is $423,000, meaning the value of Debtor's 50% interest is $211,500. No party appears to dispute this valuation, but no party has moved for summary judgment on the issue either.

Debtor also asserts valuations of the defendants' liens in the complaint. The Court has valued the judgment liens held by Blakes Service Center and Meherrin Agricultural and Chemical Co. at zero as a result of their defaults. No party has moved for summary judgment on the issue of the value of the liens held by SCBT, CPS, and Helena. Additionally, Debtor asserts valuations based on Mary Jane Davis's 50% interest in the real property being encumbered by the notes and mortgages held by SCBT and Helena, including the March 2007 note held by

---

[4] In January 2011, SCBT initiated a foreclosure action against the real property at issue. CPS and Helena were named as defendants in the action. The Master in Equity for Orangeburg County, South Carolina entered an order and judgment of foreclosure and sale in favor of SCBT, which was executed on September 6, 2011, and filed of record on September 8, 2011. The Master in Equity included what was owed on the March 2007 note in the amount that was to be paid to SCBT from the proceeds of the foreclosure sale prior to the other lien holders, including CPS, receiving any funds. No party to the foreclosure action appealed this order. Debtor included these facts in the estoppel section of the complaint where he asserts other creditors are estopped from litigating the issue of whether the March 2007 note is secured. SCBT also includes the facts related to the Master in Equity's order in a footnote to its motion for summary judgment. CPS asserts in its answer to the complaint that it did not appeal the Master in Equity's order because Debtor filed bankruptcy before the time for filing an appeal expired and because pursuing an appeal at that point would have been a violation of the automatic stay. No party has moved for summary judgment on the issue of whether collateral estoppel applies to the matter before the Court. *See Zurcher v. Bilton*, 666 S.E.2d 224, 226 (S.C. 2008) ("Under the doctrine of collateral estoppel, also known as issue preclusion, when an issue has been actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action whether on the same or a different claim. The doctrine may not be invoked unless the precluded party has had a full and fair opportunity to litigate the issue in the first action.").

12

SCBT that only Debtor signed. It does not appear to be proper for the Court to make a finding that Mary Jane Davis's interest in the real property at issue is encumbered by these obligations in light of the fact she is not a party to this adversary proceeding.

## CONCLUSION

SCBT's motion for partial summary judgment on the issue of priority is granted. The Court finds that the March 2007 note is secured by the June 2005 and May 2008 mortgages. The Court also concludes that the liens created by these security instruments and the debts they secure have first priority in Debtor's 50% interest in the three parcels of real property at issue, Helena's lien has second priority, and Crop Production Services' judgment lien has third priority.

If the valuation of the liens on the real property and Debtor's interest in the real property is an issue that needs to be resolved prior to dismissing this adversary proceeding, a party must indicate such in a status report filed within ten (10) days of the entry date of this Order. If filed, this status report should contain a proposal regarding how to proceed toward a resolution of the valuation issue, taking into consideration that Mary Jane Davis is not a party to this adversary proceeding. If no status report is submitted, this Order shall constitute a final judgment of the Court, and the claims not resolved in this Order will be dismissed.

AND IT IS SO ORDERED.

13