## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **11-06003-dd**

Adversary Proceeding Number:  **12-80190-dd**

# ORDER

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**07/31/2013**



Entered: 07/31/2013

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Wesley O'Neal Davis,<br><br>       Debtor. | C/A No. 11-06003-dd<br><br>Adv. Pro. No. 12-80190-dd<br><br>Chapter 12 |
| Wesley O'Neal Davis,<br><br>       Plaintiff,<br><br>v.<br><br>SCBT, N.A. f/k/a South Carolina Bank and Trust, N.A., Crop Production Services, Inc., Helena Chemical Co., Blakes Service Center, and Meherrin Agricultural and Chemical Co.,<br><br>       Defendants. | **ORDER** |

This adversary proceeding comes before the Court on the complaint of the plaintiff, Wesley O'Neal Davis ("Debtor"), seeking to determine the value and priority of liens creditors hold on three parcels of real property located in Orangeburg County, South Carolina in which Debtor owns a 50% interest. Jurisdiction for this proceeding is premised upon 28 U.S.C. §§ 1334 and 157(a). This adversary proceeding is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K). Venue of this adversary proceeding is proper pursuant to 28 U.S.C. § 1409.

Creditors named as defendants in the adversary proceeding are SCBT, N.A. f/k/a South Carolina Bank and Trust, N.A. ("SCBT"), Crop Production Services, Inc. ("CPS"), Helena Chemical Co. ("Helena"), Blakes Service Center, and Meherrin Agricultural and Chemical Co. Blakes Service Center and Meherrin Agricultural and Chemical Co. did not answer the complaint, the Clerk of Court entered their default, and the Court entered an Order valuing their

judgment liens at zero.  SCBT, CPS, and Helena answered the complaint.  In its answer, CPS

asserted counterclaims to which SCBT responded and treated as crossclaims.[1]  SCBT moved for

partial summary judgment on the issue of priority of the various lien holders with respect to their

interests in the three parcels of real estate, and CPS was the only party to respond in opposition.

The Court held a hearing on the motion for partial summary judgment on January 22, 2013.  The

Court granted SCBT's motion for partial summary judgment, after which CPS filed a motion to

reconsider.  SCBT responded in opposition and, the Court held a hearing on the motion to

reconsider on May 13, 2013.  The court granted CPS's motion to reconsider, and a trial was held

on June 11, 2013.

After careful consideration of the applicable law, arguments of counsel, and evidence

submitted, the Court issues the following findings of fact and conclusions of law under Federal

Rule of Civil Procedure 52(a), made applicable by Federal Rule of Bankruptcy Procedure 7052.[2]


## FINDINGS OF FACT[3]

1.    On September 28, 2011, Debtor filed a voluntary petition for relief under Chapter

12 of the Bankruptcy Code.  Debtor's bankruptcy case is captioned *In re Wesley O'Neal Davis*,

---

[1] Although not indicated as such in the complaint, it appears that Debtor intended to bring
this action as an interpleader, given the repeated statements by Debtor's counsel that the order of
priority of the defendants' interests in the three parcels of real property does not matter to Debtor
except to the extent a determination of the order of priority aids in the administration of the
bankruptcy estate.  *See* Fed. R. Civ. P. 22; Fed. R. Bankr. P. 7022; *see also* 10 *Collier on
Bankruptcy* § 7001.03[2] (Alan N. Resnick and Henry J. Sommer eds., 16th ed.) ("Thus, where
there are competing claims against property of the estate, as in a dispute over the relative priority
of liens, the trustee could bring an adversary proceeding in the nature of interpleader against the
competing claimants and obtain a conclusive determination of the rights of all claimants.").

[2] To the extent any of the following findings of fact constitute conclusions of law, they
are adopted as such, and to the extent any of the following conclusions of law constitute findings
of fact, they are also so adopted.

[3] Many of the facts set forth herein are in the parties' joint pretrial order as facts which
are admitted and require no proof.

Case No. 12-06003-dd, and is pending in the United States Bankruptcy Court for the District of South Carolina.

2.      On July 27, 2012, Debtor filed this adversary proceeding to determine the value and priority of liens creditors hold on three parcels of real property located in Orangeburg County, South Carolina (the "Property").

3.      Prior to trial, Debtor, SCBT, CPS, Helena, and the chapter 12 trustee entered into a consent order stipulating that the total value of the Property is $423,000.  These parties also agreed that the outcome of this proceeding has no effect on the extent or validity of liens on the interest of Debtor's wife, Mary Jane Davis, in the Property.

4.      The bankruptcy estate has a 50% interest in the Property.  The value of the estate's 50% interest is $211,500.

5.      On June 2, 2005, Debtor and Mary Jane Davis executed a promissory note to SCBT in return for a loan in the amount of $191,375.  Pl.'s ex. 1.

6.      As security for the loan, Mr. and Mrs. Davis executed a mortgage dated June 2, 2005, on the Property, and the mortgage was recorded on June 9, 2005.  Pl.'s ex. 3.

7.      The June 2005 mortgage defines "Borrower" as "WESLEY ONEAL DAVIS AND MARY JANE DAVIS JOINTLY."  *Id.*

8.      The June 2005 mortgage contains a future advance clause that states "[t]he lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs."  *Id.*

9.      On March 14, 2007, Debtor executed a promissory note to SCBT in return for a loan in the amount of $138,600.  In the area for describing the security for the note, the note states "SEE ADDENDUM."  Pl.'s ex. 7.

10.     The addendum to the March 2007 note is signed by Debtor and lists various security agreements Debtor executed during the preceding years, including the entry: "Mortgage dated 06-02-2005 in the name of Wesley O'Neal Davis and Mary Jane Davis."  Pl.'s ex. 8.

11.     Mary Jane Davis did not execute either the March 2007 note or the addendum. These documents were not recorded.

12.     On May 6, 2008, Debtor executed a promissory note to SCBT in return for a loan in the amount of $316,000.  Pl.'s ex. 4.

13.     In connection with this promissory note, Mr. and Mrs. Davis executed a mortgage dated May 6, 2008, which was recorded on May 19, 2008.  Pl.'s ex. 6.

14.     Beside "MORTGAGOR," the May 2008  mortgage lists "WESLEY O'NEAL DAVIS and Mary Jane Davis."  *Id.*

15.     The May 2008 mortgage states in paragraph 2 that "[f]or good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property."   The described property is the three parcels in Orangeburg County.  *Id.*

16.     Under paragraph 4, the May 2008 mortgage provides that "[t]he term 'Secured Debt' includes, but is not limited to, the following: . . . [a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law . . . ."  *Id.*

17.     The May 2008 mortgage also defines "Secured Debt" as including "[a]ll future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt." The mortgage further states in connection with future advances that "[i]f more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others." *Id.*

18.     Under a clause entitled "JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND," the May 2008 mortgage provides:

> All duties under this Mortgage are joint and individual.  If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt.

Under paragraph 4.A., the mortgage defines "Evidence of Debt" as the "NOTE DATED 05-06-2008 I/A/O $316,000.00 I/N/O WESLEY O'NEAL DAVIS WITH A MATURITY DATE OF 05-06-2015." *Id.*

19.     With respect to Helena, Mr. and Mrs. Davis executed a promissory note dated May 29, 2009, in return for a loan in the amount of $35,957.35.  As security for the note, Mr. and Mrs. Davis signed a mortgage dated May 29, 2009, on the Property.  The mortgage to Helena was recorded on June 1, 2009.

20.     As for CPS, a judgment was entered in its favor in the amount of $98,711.15 against Debtor and was recorded on March 5, 2010, in Orangeburg County.  This judgment is against Debtor and Davis Farms and not against Mary Jane Davis.  Pl.'s ex. 11.

21.    Subsequently, Blake Services Center and Meherrin Agricultural and Chemical Co. recorded judgments in Orangeburg County.

22.    SCBT filed several claims in Debtor's bankruptcy case, including a secured claim in the amount of $132,597.31 with the June 2005 note and mortgage and a commercial security agreement attached, Pl.'s ex. 2; a secured claim in the amount of $125,814.49 with the May 2008 note and mortgage and a Uniform Commercial Code ("UCC") financing statement attached, Pl.'s ex. 5; and a secured claim in the amount of $98,655.79 with the March 2007 note, the June 2005 mortgage, the May 2008 mortgage, two UCC financing statements, and a commercial security agreement attached, Pl.'s ex. 9.

23.    CPS filed a claim in the amount of $106,112.03 based on its judgment.

24.    Helena submitted a claim based on its promissory note and mortgage in the amount of $40,000, which it later amended to $40,561.26.

25.    Debtor asserts in the complaint that all three of SCBT's claims are secured and have first priority with respect to Debtor's 50% interest in the Property, that Helena has second priority, and that CPS has third priority.  SCBT agrees with Debtor's contentions.

26.    CPS does not dispute the priority of SCBT's $125,814.49 claim and $132,597.31 claim or that these claims are secured by Debtor's 50% interest in the Property.  CPS does dispute the priority and secured status of the $98,655.79 claim arising from the March 2007 note. CPS argues that SCBT's $125,814.19 claim and $132,597.31 claim have first priority with respect to Debtor's 50% interest in the Property, that Helena's claim has second priority, and that its claim has third priority.

## CONCLUSIONS OF LAW

When applying state law, federal courts have a duty "to ascertain from all the available data what the state law is and apply it." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *see also Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 464-65 (1967). In this regard, a state's highest court is "the best authority on its own law." *Bosch*, 387 U.S. at 465; *see also West*, 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law."); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992) ("The best evidence to this effect would be, of course, a decision by the highest court of New Jersey which addresses the contract interpretation issues now before us, but that court has not spoken to many of these questions."). When a state's highest court has not spoken on an issue, a federal court must "predict how that court would rule if presented with the issue." *Private Mortgage Inv. Serv., Inc. v. Hotel & Club Assoc., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002); *see also Bosch*, 387 U.S. at 465 ("If there be no decision by [a state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."). Neither the parties nor the Court has located a South Carolina appellate court decision entirely on point with the issues before the Court.

## A. Priority

A mortgage is a contract between the parties who entered into it. "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "Where an agreement is clear on its face and unambiguous, 'the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement.'" *Miles v. Miles*, 711 S.E.2d 880, 883 (S.C. 2011) (quoting *Smith-Cooper v. Cooper*,

543 S.E.2d 271, 274 (S.C. Ct. App. 2001)).  "However, if the agreement is ambiguous, it is the

court's duty to determine the intent of the parties."  *Id.*  "It may do so by examining extrinsic

evidence."  *Id.*  "An agreement is ambiguous if it is susceptible to more than one interpretation or

its meaning is unclear."  *Id.*  "The interpretation of an unambiguous contract is a question of

law."  *Id.*  "Similarly, whether a contract is ambiguous is a question of law."  *Id.*  "If the court

finds it necessary to examine extrinsic evidence to discern the intent of the parties, the

determination of intent is a question of fact."  *Id.*

At trial, Debtor, who is one of the mortgagors under the June 2005 and May 2008

mortgages and the obligor under the March 2007 note, testified that both mortgages secured the

March 2007 note.  Debtor testified he understood that he would be required to put up collateral in

order to obtain the March 2007 loan.  He further testified that he intended to secure the loan with

the June 2005 mortgage and other collateral.  Additionally, Debtor testified that he intended for

the May 2008 mortgage to serve as collateral on any outstanding debt, including the March 2007

loan.

Mary Jane Davis, who is the other mortgagor under both mortgages, testified at trial that

it was her understanding that SCBT and Debtor intended for the March 2007 loan to be secured

by the June 2005 mortgage.  Mrs. Davis also testified that she, Debtor, and SCBT intended to

include existing debt in the May 2008 mortgage, including debt solely in Debtor's name.

Larry Windham, a SCBT employee, testified concerning the June 2005 mortgage and

March 2007 loan.  From 2005 through 2007, Windham was a lender with SCBT and had primary

responsibility over Debtor's loans.  Windham testified that in March 2007, he referred to the

June 2005 mortgage when determining whether or not a new mortgage would be necessary for

the March 2007 note.  He did not believe a new mortgage would be necessary based on the

future advance clause which allowed Debtor to borrow up to 150% of the principal amount.  By staying within this cap SCBT and Debtor intended to use the June 2005 mortgage to secure the March 2007 loan.  The parties hoped that this would allow them to avoid the fees associated with obtaining a new mortgage.

Katie Hane, a SCBT employee who worked with Mr. and Mrs. Davis in connection with their May 2008 mortgage, provided testimony concerning that mortgage.  Hane testified that as part of the lending process in 2008 she examined the June 2005 mortgage and the March 2007 promissory note.  Because the total amount requested by Debtor was over the 150% allowed by the June 2005 mortgage, Hane determined that the bank would not lend additional funds without more collateral.  As a result, the Mr. and Mrs. Davis executed the May 2008 mortgage.  Hane testified that this mortgage was intended to cover all past and present loans, including the March 2007 loan.  Hane discussed this with Mr. and Mrs. Davis, who appeared to understand and agree with this intention.

The Court finds that the intention of Debtor and SCBT for the May 2008 mortgage to secure the March 2007 note is consistent with the language of the May 2008 mortgage.  This mortgage defines the debt being secured as not only the contemporaneous note but also "[a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law."[4]  The Court finds this language sufficient to secure the March 2007 note with Debtor's 50% interest in the Property.[5]  Given that the Court finds the language in the May 2008

---

[4] Notably, the May 2008 mortgage does not say Wesley O'Neal Davis and Mary Jane Davis *jointly*.

[5] While it may seem inconsistent for the Court to discuss the witnesses' testimony regarding intent before discussing the language in the May 2008 mortgage and whether the language is ambiguous, CPS has never moved for summary judgment or judgment as a matter of law based on an argument that the mortgages at issue are unambiguous in that they do not secure the March 2007 note.  *See Miles*, 711 S.E.2d at 883 ("The interpretation of an unambiguous

mortgage sufficient, it is not necessary to decide whether the June 2005 mortgage secures the March 2007 note.

The Court also finds that the May 2008 mortgage provides sufficient notice to subsequent lien holders such as CPS that the mortgage secures debts owed by one mortgagor but not the other at least to the extent of that mortgagor's interest in the Property. *See Murrells Inlet Corp. v. Ward*, 662 S.E.2d 452, 457 (S.C. Ct. App. 2008) ("Subsequent purchasers are entitled to rely on recorded deeds and plats to determine their rights in respect to property."). CPS is a lien holder by virtue of the recording of its judgment against Debtor and Davis Farms on March 5, 2010. South Carolina's recording statute is a "race-notice" statute which provides protection to a subsequent purchaser or creditor that records first. *See* S.C. Code Ann. § 30-7-10; *Leasing Enter., Inc. v. Livingston*, 363 S.E.2d 410, 412 (S.C. Ct. App. 1987). In addition, South Carolina Code Annotated Section 29-3-50(A) provides that:

> Any mortgage or other instrument conveying an interest in or creating a lien on any real estate, securing existing indebtedness or future advances to be made, regardless of whether the advances are to be made at the option of the lender, are valid from the day and hour when recorded so as to affect the rights of subsequent creditors, whether lien creditors or simple contract creditors, or purchasers for valuable consideration without notice to the same extent as if the advances were made as of the date of the execution of the mortgage or other instrument for the total amount of advances made thereunder, together with all other indebtedness and sums secured thereby, the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated therein, plus interest thereon, attorney's fees and court costs.

---

contract is a question of law."). CPS also did not object to the admission of extrinsic evidence at trial. From this, the Court can only surmise that CPS believes the language in the mortgages is ambiguous. Assuming the mortgages are ambiguous, it is appropriate for the Court to examine extrinsic evidence of intent. *See id.* As a result of the trial, CPS had the opportunity to question the witnesses regarding their intent at the time the mortgages and the March 2007 note were signed. Their testimony clearly indicated that they intended for both mortgages to secure the March 2007 note.

"[R]ecording is the method by which a third party without actual notice is alerted to the possible transfer of interests in real property." *Leasing Enter.*, 363 S.E.2d at 412.  Recording also provides constructive notice to others of the interest recorded. *Ex parte Johnson*, 145 S.E. 113, 122 (S.C. 1928).  "Constructive notice is a legal inference which substitutes for actual notice." *Strother v. Lexington County Recreation Comm'n*, 504 S.E.2d 117, 122 n.6 (S.C. 1998).  "It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts." *Id.*

The Court finds that the language in the May 2008 mortgage provides constructive notice that this mortgage secured existing debts such as the March 2007 note, at least to the extent of the 50% interest in the Property of the obligor under that note.  The May 2008 mortgage indicates it secures "[a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law."  Through the exercise of reasonable diligence, a creditor who sees this mortgage could contact SCBT to find out if there are other obligations owed by the mortgagors besides the note executed contemporaneously with the respective mortgage.  Additionally, with respect to an obligation one mortgagor owes but not the other, the mortgage would put a creditor on notice that the obligation the individual mortgagor owes encumbers, at a minimum, that mortgagor's interest in the Property.[6]

Section 29-3-50(A) states that "the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated [in the mortgage], plus interest thereon, attorney's fees and court costs."  The maximum principal amount under the May 2008 mortgage is $316,000.  The note executed contemporaneously with

---

[6] As a practical matter, because CPS's interest in the property is a judgment lien and there is no indication in the record that the obligation which is the basis of the judgment was secured, CPS is probably not a creditor that relied on a search of real property records prior to extending credit to Debtor.

the May 2008 mortgage was for a loan of $316,000.  However, SCBT has filed a claim for

$125,814.49 arising out of the May 2008 note and a claim for $98,655.79 arising out of the

March 2007 note.  The total of these two amounts does not exceed $316,000.  The claim for

$132,597.31 arising out of June 2005 note is secured by its own security instrument.

Consequently, the amount that SCBT asserts is secured by the May 2008 mortgage at this time

does not exceed the maximum principal amount stated in the mortgage.  CPS has not asserted or

presented authority demonstrating a different interpretation of section 29-3-50(A) controls.

In sum, the Court finds that the May 2008 mortgage secures the March 2007 note.  The

Court also concludes that the liens the June 2005 and May 2008 mortgages create and the debts

these mortgages secure, including the March 2007 note, have first priority in Debtor's 50%

interest in the Property, Helena's lien has second priority, and CPS's judgment lien has third

priority.[7]

## B. Unclean Hands

At trial, CPS moved to amend its answer to assert an affirmative defense of unclean

hands.  More specifically, CPS alleges that SCBT engaged in the unauthorized practice of law

---

[7] In January 2011, SCBT initiated a foreclosure action against the real property at issue. CPS and Helena were named as defendants in the action.  The Master in Equity for Orangeburg County, South Carolina entered an order and judgment of foreclosure and sale in favor of SCBT, which was executed on September 6, 2011, and filed of record on September 8, 2011.  The Master in Equity included what was owed on the March 2007 note in the amount that was to be paid to SCBT from the proceeds of the foreclosure sale prior to the other lien holders, including CPS, receiving any funds.  No party to the foreclosure action appealed this order.  Debtor included these facts in the estoppel section of the complaint where he asserts other creditors are estopped from litigating the issue of whether the March 2007 note is secured.  SCBT also included the facts related to the Master in Equity's order in a footnote to its motion for summary judgment.  CPS asserted in its answer to the complaint that it did not appeal the Master in Equity's order because Debtor filed bankruptcy before the time for filing an appeal expired and because pursuing an appeal at that point would have been a violation of the automatic stay.  At trial, no party pursued the issue of whether CPS is estopped from litigating the priority question before the Court.

when it closed the March 2007 loan without the aid of an attorney.[8]    Federal Rule of Civil

Procedure 15(b), made applicable by Bankruptcy Rule 7015, sets forth the standard for

amendments to pleadings during and after trial.    Rule 15(b)(1) deals with the situation where a

party objects to evidence on grounds that it is not within the issues raised in the pleadings.

SCBT did not object to CPS questioning witnesses regarding the involvement of an attorney in

the March 2007 note.    Therefore, Rule 15(b)(1) does not apply here.    Rule 15(b)(2) relates to

issues tried by consent:

> When an issue not raised by the pleadings is tried by the parties' express or
> implied consent, it must be treated in all respects as if raised in the pleadings.    A
> party may move—at any time, even after judgment—to amend the pleadings to
> conform them to the evidence and to raise an unpleaded issue.    But failure to
> amend does not affect the result of the trial of that issue.

SCBT did not expressly consent to the issue of unclean hands being tried, which leaves the

question of whether the issue was tried with implied consent.    "The admission of evidence

without objection concerning an issue that is the subject of amendment is an indicium of implied

consent."    *McLeod v. Stevens*, 617 F.2d 1038, 1040 (4th Cir. 1980) (citing 6A Charles Alan

Wright et al., *Federal Practice & Procedure* § 1493 (3d ed.)).    However, "a court will not imply

consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally

tends to establish an unpleaded claim."    *Quillen v. Int'l Playtex. Inc.*, 789 F.2d 1041, 1044 (4th

Cir. 1986).    In other words, a party's failure to object may be explained by the fact that the

evidence admitted was related to both pleaded and unpleaded issues.    It is unnecessary to rule on

the question of implied consent because even if CPS were granted leave to amend its answer to

---

[8] At trial, the Court gave the parties fourteen days to submit briefing on the issue of
unclean hands and whether CPS should be permitted to amend its answer.    SCBT filed its brief
timely.    CPS, the party seeking leave from the Court to amend its answer, submitted its brief
fifteen days after trial.

assert unclean hands, the Court finds that unclean hands does not apply here.[9]  Ruling on this

basis is consistent with the principle that a motion to amend before trial under Rule 15(a) may be

denied based on futility.[10]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Under South Carolina law, "[a]ll real estate and mortgage loan closings must be

supervised by an attorney."  *Matrix Fin. Serv. Corp. v. Frazer*, 714 S.E.2d 532, 534 (S.C. 2011)

(citing *Doe v. McMaster*, 585 S.E.2d 773, 777 (S.C. 2003); *State v. Buyers Serv. Co.*, 357 S.E.2d

15, 19 (S.C. 1987) (per curiam)).  "Performing a title search, preparing title and loan documents,

and closing a loan without the supervision of an attorney constitutes the unauthorized practice of

law."  *Matrix Fin. Serv.*, 714 S.E.2d at 534 (citing *Buyers Serv.*, 357 S.E.2d at 17-19).  Failure to

have attorney supervision during the loan process precludes "a lender from obtaining equitable

relief."  *BAC Home Loan Servicing, L.P. v. Kinder*, 731 S.E.2d 547, 549-50 (S.C. 2012) (citing

*Matrix Fin. Serv.*, 714 S.E.2d at 535).  This ruling in *Matrix Financial Services Corp. v. Frazer*

barring lenders from obtaining equitable relief applies to documents a party seeks to enforce that

are filed after the issuance date of the opinion in *Matrix*.  *Id.* at 550; *see also Matrix Fin. Serv.*,

731 S.E.2d at 535.

The South Carolina Supreme Court issued the opinion in *Matrix* on August 8, 2011, well

after the recording dates of the June 2005 and May 2008 mortgages that SCBT argues secure the

---

[9] The scheduling order this Court entered on October 30, 2012, directed the parties to submit a pretrial order, which includes a section on the issues to be determined at trial.  The scheduling order states that the pretrial order "may not be amended after submission without a showing of good cause by the party proposing the amendment.  Parties are bound by the proposed Pretrial Order.  Once entered by the Court, the Joint Pretrial Order will control unless relief therefrom is granted pursuant to Fed. R. Civ. P. 60."  In the joint pretrial order entered May 24, 2013, the parties do not list unclean hands as one of the issues to be determined.  However, because the Court finds the proposed amendment to CPS's answer futile, it is not necessary to decide whether CPS's failure to list the issue in the pretrial order bars the amendment.

[10] CPS appears to agree that futility can be a basis for denial of a Rule 15(b) motion because its brief in support of its motion, after setting forth the language of Rule 15(b), lists futility as a reason for which a motion to amend under Rule 15 can be denied.  Docket # 54, p. 3.

March 2007 note.  It would be inconsistent with that court's precedent for this Court to apply the

equitable doctrine of unclean hands to render the March 2007 note unsecured, given that court's

limitation of *Matrix* to lenders seeking to enforce documents filed after August 8, 2011, and its

ruling that, regardless of whether an attorney participated in the closing, a holder of a second

mortgage recorded in April 2007 was not precluded from recovering surplus funds remaining

after a foreclosure sale.[11]  *See BAC Home Loan Servicing*, 731 S.E.2d at 549-50.  Additionally,

the doctrine of unclean hands is based on "'the principle that the court will not grant relief to a

party who has engaged in wrongful, illegal, or unethical acts.'"  *In re Riley*, 486 B.R. 711, 716

---

[11] Furthermore, the cases the parties cite in connection with this issue are distinguishable in that none involve whether attorney participation is required when a lender attempts to make a loan under a future advance clause of an existing mortgage.  *Compare Matrix Fin. Serv.*, 714 S.E.2d at 534 (holding lender committed unauthorized practice of law in closing a refinance mortgage), *Doe*, 585 S.E.2d at 776 (holding that refinancing an existing mortgage without attorney supervision constitutes unauthorized practice of law), and *Buyers Serv. Co.*, 357 S.E.2d at 17-19 (holding that, with respect to a mortgage loan and transfer of real property, performing a title search, preparing title and loan documents, and closing the loan without attorney supervision constitutes the unauthorized practice of law), *with Crawford v. Central Mortgage Co.*,-- S.E.2d --, No. 2012-205608, 2013 WL 3048885, at *4 (S.C. June 19, 2013) (holding that "modifying a loan without attorney supervision does not constitute the unauthorized practice of law").  Among the cases cited by the parties, what is perhaps the most analogous situation involved a home equity line of credit.  In that case, a husband took out a home equity line of credit secured by real property titled in the wife's name only.  *Wachovia Bank, N.A. v. Coffey*, 698 S.E.2d 244, 246 (S.C. Ct. App. 2010), *affirmed as modified*, -- S.E.2d --, No. 2010-174086, 2013 WL 3461691, at *3 (S.C. July 10, 2013).  After the husband died, Wachovia sought to foreclose its mortgage and asserted causes of action for ratification, prejudgment interest, unjust enrichment, equitable lien, and equitable mortgage.  *Id.* at 246.  The South Carolina Court of Appeals held that the doctrine of unclean hands barred Wachovia from seeking equitable relief because it processed the home equity loan without the supervision of an attorney.  *Id.* at 248.  In its opinion affirming as modified the Court of Appeals' decision, the South Carolina Supreme Court held that Wachovia could not pursue an action against the wife related to the mortgage because the mortgage was invalid, as the property Wachovia thought secured the note the husband signed was titled in the wife's name only.  *Wachovia Bank, N.A. v. Coffey*, -- S.E.2d --, No. 2010-174086, 2013 WL 3461691, at *3 (S.C. July 10, 2013).  The court did not reach the issue of unclean hands. Consequently, the precedential value of the Court of Appeals' decision for purposes of the issue before this Court is limited.  Moreover, the facts here are distinguishable from *Coffey* because this Court is only ruling with respect to whether the March 2007 note is secured by Debtor's 50% interest in the Property rather than considering whether the note encumbers the interest in the Property of a party who did not sign the note.

(Bankr. D.S.C. 2013) (quoting *In re King*, No. 10-05756-DD, 2010 WL 5173191, at \*4 (Bankr. D.S.C. Sept. 13, 2010)).   Unlike the creditors in *Matrix* and *Wachovia Bank, N.A. v. Coffey*, SCBT did not file this adversary proceeding seeking equitable relief from this Court.   Debtor, who is the obligor under the March 2007 note, initiated this adversary proceeding by filing a complaint in which he asserts that the March 2007 note is secured by the June 2005 and May 2008 mortgages.   SCBT, quite predictably, has essentially agreed with Debtor's contentions throughout this proceeding.   CPS now asks the Court to apply the doctrine of unclean hands as a sword and find a note unsecured that the Court has deemed secured based on the language of the various documents and the testimony of the witnesses at trial.   CPS has not presented a sufficient basis for the Court to apply unclean hands in such a fashion under the circumstances before it. For these reasons, CPS's motion to amend its answer is denied because the proposed amendment would be futile.

## CONCLUSION

The Court finds that the May 2008 mortgage secures the March 2007 note.   The Court also concludes that the liens the June 2005 and May 2008 mortgages create and the debts these mortgages secure, including the March 2007 note, have first priority in Debtor's 50% interest in the Property, Helena Chemical's lien has second priority, and Crop Production Services' judgment lien has third priority.   Crop Production Services' motion to amend its answer is denied.

AND IT IS SO ORDERED.